IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 05 2021 ★

LONG ISLAND OFFICE

Gail A. Raetz

_____

_____

*(Write the full name of each plaintiff who is filing
this complaint.  If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

Long Island Community Hospital,
+Tricia Rhooms-Stracker

_____

*(Write the full name of each defendant who is
being sued.  If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for Employment
Discrimination**

Case No. CV 21 1296

*(to be filled in by the Clerk's Office)*

Jury Trial:  ☒ Yes     ☐ No
*(check one)*

**BROWN, J.**

**SHIELDS, M.J.**

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach
additional pages if needed.

| | |
|---|---|
| Name | Gail A. Raetz |
| Street Address | 17 Purick Street |
| City and County | Blue Point      Suffolk |
| State and Zip Code | New York    11715 |
| Telephone Number | 631 363-0127 |
| E-mail Address | BGBMK @ opt on line . Net |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation.  For an individual defendant, include the person's job or title (if
known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Long Island Community Hospital |
| Job or Title (if known) | |
| Street Address | 101 Hospital Road |
| City and County | East Patchogue    Suffolk |
| State and Zip Code | New York    11772 |
| Telephone Number | 631 654. 7100 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | Tricia Rhooms-Stracker |
| Job or Title (if known) | Nurse Manager |
| Street Address | 101 Hospital Road |
| City and County | East Patchogue    Suffolk |

|                     |                                            |
|---------------------|--------------------------------------------|
| State and Zip Code  | New York   11772                           |
| Telephone Number    | 631 654.7100                               |
| E-mail Address (if known) |                                      |

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

|                     |                                              |
|---------------------|----------------------------------------------|
| Name                | Long Island Community Hosp.tal               |
| Street Address      | 101 Hospital Road                            |
| City and County     | East Patchogue  Suffolk                      |
| State and Zip Code  | New York   11772                             |
| Telephone Number    | 631. 654.7100                                |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

   *(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

   *(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

   *(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Other federal law *(specify the federal law)*:
_____

X   Relevant state law *(specify, if known)*:
New York Executive Law 296
_____

☐   Relevant city or county law *(specify, if known)*:
_____

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed. · Please see attached

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐   Failure to hire me.

X   Termination of my employment.

☐   Failure to promote me.

☐   Failure to accommodate my disability.

X   Unequal terms and conditions of my employment.

☐   Retaliation.

☐   Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
June 2019 up to and including Jan 23 2020

C.     I believe that defendant(s) *(check one)*:

      ☐     is/are still committing these acts against me.

      ☒     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

      ☒     race _____

      ☐     color_____

      ☐     gender/sex _____

      ☐     religion _____

      ☐     national origin _____

      ☐     age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

      ☐     disability or perceived disability *(specify disability)*

      _____

E.     The facts of my case are as follows.  Attach additional pages if needed.

Please see attached EEOC supporting affidavit.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.    **Exhaustion of Federal Administrative Remedies**

    A.    It is my best recollection that I filed a charge with the Equal Employment
Opportunity Commission or my Equal Employment Opportunity counselor
regarding the defendant's alleged discriminatory conduct on *(date)*

        June 17 2020

    B.    The Equal Employment Opportunity Commission *(check one)*:

        ☐    has not issued a Notice of Right to Sue letter.

        ☒    issued a Notice of Right to Sue letter, which I received on *(date)*

        January 7 2021

        *(Note:  Attach a copy of the Notice of Right to Sue letter from the
Equal Employment Opportunity Commission to this complaint.)*

    C.    Only litigants alleging age discrimination must answer this question.

        Since filing my charge of age discrimination with the Equal Employment
Opportunity Commission regarding the defendant's alleged discriminatory
conduct *(check one)*:

        ☐    60 days or more have elapsed.

        ☐    less than 60 days have elapsed.

V.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to
order.  Do not make legal arguments.  Include any basis for claiming that the wrongs
alleged are continuing at the present time.  Include the amounts of any actual damages
claimed for the acts alleged and the basis for these amounts.  Include any punitive or
exemplary damages claimed, the amounts, and the reasons you claim you are entitled to
actual or punitive money damages.

actual damages, punitive damages,
compensatroy damages and emotional
damages, to be determined by a jury.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the
cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for
extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery; and (4) the
complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-
related papers may be served. I understand that my failure to keep a current
address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: April 2, 2021

Signature of Plaintiff    *Gail A Raetz*

Printed Name of Plaintiff    Gail A. Raetz

EEOC Form 161 (11/2020)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To:  **Gail Raetz**
**17 Purick Street**
**Blue Point, NY 11715**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-04065** | **Auriel Balbuena,** Investigator | **(929) 506-5281** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Vanessa Guest** For
Digitally signed by Vanessa Guest
DN: cn=Vanessa Guest, o=EEOC, ou=NYDO, email=vanessa.guest@eeoc.gov, c=US
Date: 2021.01.07 14:29:36 -05'00'

**Judy A. Keenan,**
**District Director**

January 7, 2021
(Date Issued)

Enclosures(s)

cc:
**Richard Margulis**
**President and CEO**
**LONG ISLAND COMMUNITY HOSPITAL**
**101 Hospital Road**
**Patchogue, NY 11772**

**Scott M. Mishkin, Esq.**
**SCOTT MICHAEL MISHKIN, PC**
**One Suffolk Square,**
**Suite 240**
**Greenlawn, NY 11740**

## EEOC SUPPORITNG AFFIDAVIT OF CHARGING PARTY GAIL RAETZ

The following is Supporting Affidavit is sworn to and by Gail Raetz, (Charging Party), to be filed with her formal Charge of Discrimination as for and against Long Island Community Hospital (Respondent) for its racial discrimination against her.

1. **Respondent's Business:**

Respondent, formerly known as Brookhaven Memorial Hospital is located in Patchogue, New York in Suffolk County and is a voluntary, not for profit community hospital with a license for Three Hundred Six (306) beds and employs over Three Thousand (3000) people. The Supervisor that caused the racial discrimination against Charging Party is Nurse Manager Tricia Rhooms-Stracker (TRS).

2. **Personal Harm:**

Charging Party, a Caucasian female, dedication to Respondent spans Forty-Four (44) years and during career at Respondent had worked Twenty-Five (25) years on its Unit 1-East as a Unit Secretary, before her final Manager, TRS an African American Female, she had Eleven (11) other Nurse Managers and each of Respondent's Nurse Managers, except for one, issued Charging Party wonderful performance appraisals and that Charging Party always goes above and beyond," "extremely helpful," and "always willing to lend a hand."

In fact, in 1996, Charging Party was awarded "Employee of the Month."

In the beginning of her supervision of Charging Party, TRS and Charging Party had a good working relationship. They would meet weekly to go over the staffing/scheduling needs.

On or about the Summer of 2019, TRS began giving Charging Party more and more assignments to do in addition to her daily duties, and they met for scheduling less and less frequently.

In July 2019, Charging Party received an e-mail from TRS telling her that an assignment she gave her had to be completed by weeks end.

TRS copied her e-mail to two upper Respondent Management employees, Debra Grimm, Respondent's Vice President of Nursing and Mary Maliszewski, Respondent's Director of Nursing for Critical Care.

Charging Party felt this was solely meant to intimidate her as upon information and belief, TRS did not do this to Charging Party's similarly situated African American co-workers.

1

TRS decided she wanted all the schedule change requests and authorizations for time adjustments in a binder in chronological order.

In the past, Charging Party had kept them in folders according to the pay period. Charging Party was told by her previous Nurse Managers that once they were scanned and sent to payroll she could toss them, but Charging Party kept them for her own records in case she had to check something, but now TRS wanted Charging Party to punch holes in them and place them in a binder in date order. The only way to get this done was for Charging Party to take some of them home with her every night, put them in date order, then the next day punch holes in them and put them in the binder.

On Sunday, July 28, 2019, TRS sent Charging Party an e-mail telling her to have all the time adjustments and schedule changes in a binder in order by date by the following day. This completely overwhelmed Charging Party as she was trying to do all her normal daily job responsibilities plus everything TRS wanted done. Charging Party needed her job because of the income and the medical benefits for her family. Charging Party saw how when people didn't do things the way TRS wanted she made their lives so miserable they either quit or resigned.

In August 2019, TRS wanted Charging Party to use a template she created to post a "needs list" of open shifts needing coverage. Whenever Charging Party asked for help with something like this, she would get an eye roll and a deep sigh. When Charging Party would tell her she was giving her very best attempt to complete one of the many tasks she assigned to her but could not promise it would be done by the day's end, she was told that it was unacceptable.

The next day in August 2019, TRS called Charging Party to come to Human Resources and meet with her and Michelle Swiatkowski (Swaitkowski) Charging Party went to Swaitkowski's office, where she asked her why she was so overwhelmed. Charging Party told her that they had gone from three full time secretaries to just herself.

Charging Party explained that TRS is new so she was helping her learn how to get things done. At this point TRS rolled her eyes, and made a sarcastic sound and said "I am learning by myself" as if Charging Party wasn't helping her at all. Michelle said she would go over Charging Party's job description and would have another meeting.

In October 2019, Charging Party received an e-mail from TRS telling her to complete another one of her tasks. At the end of the email, TRS told Charging Party to please remove any of her personal items from the administrative office and have the key to her by days end.

Up until the time Charging Party was terminated no one used that space in the administrative office on any regular basis. This was very hurtful and intimidating.

Up until the time Charging Party was terminated no one used that space in the administrative office on any regular basis. This was very hurtful and intimidating.

Also, in October 2019, TRS emailed Charging Party a few minutes before 2:00pm, telling her to come to "Access" at 2:00pm to take the minutes of the staff meeting.

However, Charging Party was at lunch and never got the email.

When she returned from lunch, Charging Party was told by the staff that TRS needed her in Access. Charging Party went to Access where TRS told her she had needed her at 2:00pm to take the minutes of the staff meeting. Charging Party told her that she had never taken minutes at a meeting.

When she returned to the unit, Charging Party emailed Swiatkowski in Human Resources and told her what happened. Charging Party asked if there had been any more discussion about her job description. Swaitkowski responded the next day and said a meeting was set up for Charging Party, TRS and herself for Wednesday in Human Resources.

At the Wednesday meeting with Respondents' Human Resources, Swaitkowski started by telling Charging Party that TRS is her boss and that anything she tells her to do, she must do. At this point, TRS said that she should have written Charging Party up for insubordination for not taking the minutes at the staff meeting and that she had been disrespectful towards her.

The working environment between Charging Party and TRS then became increasingly hostile, with the assignments becoming more and more impossible to complete in a reasonable manner.

The hostile work environment soon became worse. Charging Party was suspended from work on January 20, 2020, pending an investigation. First, she was told that the reason for the suspension was that she had come into the hospital on her day off and had used the employee entrance. Charging Party had admitted to doing this but that she had never known in all her 44 years of employment at Respondent that this was against protocol.

Next, Charging Party was told that she also had someone with her when she entered the hospital on her day off.

She said yes that she had her developmentally disabled daughter with her.

Charging Party had been bringing her daughter into the hospital and on her unit for the last 25 years.

There was never a chance of a confidentiality breach as Charging Party's daughter is unable to comprehend what she is seeing and is unable to repeat anything about who she may have seen.

During this discussion about the reasons for the suspension, Charging Party mentioned that TRS had met her daughter, at which time TRS interrupted her and said "Yes Gail, when you brought her into my office is when I told you this is wrong you can never ever bring her in again."

This was an outright lie.

TRS never told Charging Party not to bring her daughter in.

At this point, Charging Party was suspended pending an investigation.

Charging Party left the meeting upset, but confident that when the truth came out, she would be back at work.  Furthermore, there was another staff member present at the time that TRS claims to have told Charging Party to never bring her daughter in, and this person knows that TRS never said anything to this effect.

Charging Party received a call from TRS on Tuesday, January 21, 2020, advising that Human Resources wanted a meeting on Thursday, January 23, 2020.  At this meeting, Charging Party was told that Respondent was going ahead with her termination.

On Friday, January 31,2020, Charging Party received a call from her union rep, Heather Wilson (Wilson) that Robert Morris (Morris) the union organizer, has a meeting set up for them with Human Resources on Wednesday February 5, 2020.  Morris could not attend, however Danielle Ringgold, (Ringgold) Contract Administrator, attended in his place.

Ringgold said they would ask for a last chance grievance of the termination.  Charging Party and Wilson went over to Respondent's Human Resources for the scheduled meeting and were told that there was actually no meeting that day.

Swiatkowski said they had not even set up the meeting yet.  Swiatkowski gave Charging Party the contents from her locker and said they would contact Morris for a meeting date.

A meeting was set up for Thursday February 13, 2020.  The meeting on February 13, 2020 was attended by Charging Party, Wilson, TRS, Swiatowski, Maha Singh (Singh) Respondent's Director of Human Resources, Morris and Ringgold.

Everything seemed to be going well when out of nowhere TRS starts yelling "If she would just admit I told her instead of calling me a liar."

All Charging Party said was "Tricia, you never told me."  Morris asked for the proof that Charging Party was told verbally and Tricia said it was just said in conversation.  Singh said that when someone gets a verbal warning it is just put in their notes.  Charging Party was told they would get back to her within 10 days.

On Friday February 21, 2020, Heather called Charging Party and said that Respondent was not offering her job back.

Respondent pre text was it found patient information in Charging Party's locker.

4

Respondent pre text was it found patient information in Charging Party's locker.

However, Respondent never asked the reasons for the patient information being in Charging Party's locker.

The documents in Charging Party's locker were related to tasks she was working on, and needed to be secured in a safe place.

Charging Party had no other place to keep the information secure. Charging Party no longer had access to Respondent's administrative offices as TRS took Charging Party's keys to that office in October 2020.

Charging Party wanted to talk to Robert Morris, from the Union, and find out why was the union giving up on her case. Robert had previously texted Heather that the reason was that "We don't defend stupidity". This is no way to treat a Forty Four (44) year employee.

Despite pleas to reconsider and to have the Union fight for Charging Party, Respondent was not reconsidering the termination. Heather said they would go to arbitration, however, on March 16. 2020, Charging Party received a letter from the union stating that after a thorough investigation, Charging Party's case did not warrant arbitration.

Charging Party has suffered great emotional harm after being wrongfully terminated from her job of Forty Four (44) years. She has not been able to find replacement income and is still financially suffering due to Respondents discrimination against her on account of her race as a white individual.

3. **Respondent's Explanations for the Alleged Harm and Its Policies and Practice:**

Respondent's explanations for the harm Charging Party has endured are that Charging Party broke protocol by entering the employee entrance on her day off and brought her daughter to work, and that these actions necessitated termination on the first offense after Forty Four (44) years of employment.

In addition, Respondent would state that the harm Charging Party incurred had nothing to do with her race, and that TRS treats everyone the same regardless of race.

However, these reasons are merely pretext for the real reasons, that being racial discrimination based upon Charging Party's Caucasian race. This is evident in the fact that the African American employees were treated better by TRS than the Caucasian employees.

4.    **Relevant Work History:**

Charging Party began working at LICH (Brookhaven Memorial Hospital) in July of 1975 as a unit secretary. In January 1976, the hospital opened the 3rd and 4th floors and Charging Party

was assigned to work full time on Two-South Orthopedics. Charging Party worked on that unit for almost 13 years.

In 1988, Charging Party transferred to the night shift part time, working 11pm to 7am wherever she was needed. In November of 1995, Charging Party applied for and was given the job of full-time unit secretary on the newly created Behavioral Health Unit-Psychcare-1 East, where she remained for the next 25 years until her wrongful termination. Charging Party was always praised for her work at Respondent over the many years she was employed there.

**5.      Rational Basis for Believing there was Discrimination and Retaliation:**

Even from the beginning working with TRS, Charging Party did not feel included. She was never part of a conversation when there was talking with other staff. At first, Charging Party thought it was just the nurses discussing things. But soon, TRS began hiring former African American co-workers of hers and things got worse. For instance, TRS would completely ignore Charging Party when she would say "Good Morning" to her, yet she would respond happily when the Black co-workers would greet her. TRS would also ignore Charging Party when she asked her questions, causing Charging Party to have to repeat herself over and over. TRS would also turn her back to Charging Party and face her Black co-workers, say something quietly and they would all laugh.

Many times Charging Party just left the conversation area to do her work and stayed out of the conversation but still within hearing distance so she could hear her when she summoned her to come back and finish working on whatever it was they were doing. This happened numerous times. Charging Party was completely intimidated and ostracized by these openly hostile actions from TRS.

Starting in October 2019, TRS pretty much ignored Charging Party, and only spoke to her when she told her to do something. TRS spoke very low and kind of mumbled her words so she was hard to hear and understand and Charging Party would have to lean in towards her to have her repeat whatever she just said. Her attitude when Charging Party would lean in to listen again was as if she was annoying her asking her to repeat herself, and why couldn't she hear her the first time.

In addition, Charging Party was always a good, efficient and conscientious worker for the many years of her employment. Charging Party was never told not to enter the hospital through the employee entrance on her days off, and was never told to not bring her developmentally disabled daughter to work either. In fact, Charging Party brought her daughter to work on many occasions. The wrongful termination of Charging Party was clearly a result of the racial discrimination she endured from TRS.

The fact that the African American employees were treated much better than the Caucasian workers also lends itself to a rational conclusion of discriminatory behavior. Caucasian employees would get admonished for coming to work a little late, but TRS would sign a time adjustment for the African American employees that came in late with no discipline imparted. TRS would converse with the African American employees, but would ignore Charging Party except to give her new tasks to complete.

**6.      Comparative Names, Titles, and How Similarly Situated:**

Jason Melia was a Caucasian Recreation Therapist at Respondent who was treated worse than his similarly situated African American co-workers. He was ignored and made to feel stupid by TRS, who clearly made the African American employees feel included and part of the conversation. He ended up leaving Respondent due to the hostile work environment.

Debbie Green was a Caucasian Art Therapist at Respondent. Debbie was treated worse than her African American co-workers, and was spoken to if she was ever late. Debbie was terminated because she missed a few "swipe-ins" to work and was late a few times. TRS would not freely sign time adjustments for Debbie like she would for the African American employees. Danette, and Kelly Taylor, both Black Nurses, were not reprimanded or terminated for these same actions.

Danette was an African American nurse that would frequently request a time adjustment, and TRS would sign it, no problem. This meant the schedule was adjusted so it did not appear that she was late. Danette outright said "I come in when I want and I go home when I want".

Debbie Eriksen, a Caucasian Nurse, would stay late to finish her work at times and would be reprimanded by TRS for using Overtime to complete her work, but when Gary Martin, an African American Nurse, would work overtime, it was never an issue with TRS.

MaryJane Raynor was an Asian nurse that was also treated disparately from the African American nurses and was eventually forced to resign due to the hostile environment. Ms. Raynor was belittled and ignored by TRS as well.

Regina Pfeifer was a part-time Caucasian nurse who was also subjected to a hostile work environment by TRS. Ms Pfeifer was ignored, belittled and was not given preferential treatement like the African American Nurses were. She ended up resigning her position due to the hostile environment at Respondent.

Kelly Taylor is an African American employee and was frequently 2-3 hours late for his shift and nothing was ever done about it. The day staff would just have to stay until he arrived while he was not admonished for his multiple lateness's.

7.    **Witness Identification:**

Tricia Rhooms-Stracker

Michelle Swiatkowski

Regina Pfeifer

Mary-Jane Raynor

Jason Melia

Debbie Green

Kelly Taylor

Terrance Johnson

Dr. Yousef

Gail Steiger

Linda Milleisen

Danielle Ringgold

For a money judgment representing actual damages;
For a money judgment representing compensatory damages;
For a money judgment representing punitive damages;
For a money judgment representing emotional damages;
For reasonable attorney fees and costs;
For such other and further relief as may be deemed just and proper.

Dated: Islandia, New York
        June 17, 2020

_____
Gail Raetz

Sworn to me this 17th day of
June 2020

_____
Notary Public

Scott Michael Mishkin, Esq.
NOTARY PUBLIC, New York
No. 02MI6042102 Suffolk Cty.
Expires May 15, 20__

9